**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7              UNITED STATES DISTRICT COURT
8              NORTHERN DISTRICT OF CALIFORNIA
9
10
JUAN BONIFACIO ULIN,
11
                    Plaintiff,                    No. C-09-03160 EDL
12
                                                  **ORDER GRANTING IN PART AND**
      v.                                          **DENYING IN PART DEFENDANTS'**
13                                                **MOTION FOR SUMMARY**
                                                  **JUDGMENT; GRANTING**
14                                                **PLAINTIFF'S MOTION FOR PARTIAL**
                                                  **SUMMARY ADJUDICATION;**
15                                                **DENYING PLAINTIFF'S MOTION TO**
                                                  **BIFURCATE WITHOUT PREJUDICE**
16
17
LOVELL'S ANTIQUE GALLERY,
et al.,
18
                    Defendants.
19    _____/
20
21          This is a wage and hour action between Plaintiff Juan Bonefacio Ulin (also known as

"Chapin") and his former employer ALEA-72 Inc. dba Lovell's Antique Gallery and its
22
owner/manager Abraham Magidish.  Plaintiff brings claims for violation of state and federal
23
overtime law, failure to provide meal and rest periods under California law, failure to pay wages due
24
and "waiting time" penalties under California law, violation of California Business & Professions
25
Code § 17200, and violation of California Labor Code § 226 for failure to provide proper pay
26
statements.  Three motions were heard on August 31, 2010: (1) Defendants' Motion for Summary
27
Judgment or Summary Adjudication, which is now GRANTED IN PART AND DENIED IN PART;
28
(2) Plaintiff's Motion for Partial Summary Adjudication of his California Labor Code § 226 Claim,

1  which is GRANTED; and (3) Plaintiff's Motion to Bifurcate, which is DENIED without prejudice to

2  raising the issue again during pre-trial proceedings.

3  **I.      Factual Background**

4        Defendant ALEA-72 Inc., a corporation formed by Abraham Magidish in 2002, owns and

5  operates a furniture and antique store doing business under the fictitious name "Lovell's Antique

6  Gallery."  Magidish Decl. ¶ 2-3, Exs. A-B; Magidish Depo. 16.  Lovell's is open seven days a week

7  from 9 a.m. to 9 p.m.  Magidish Depo. 45.  From July 2005 to February or March 2009, Plaintiff was

8  employed by Defendants, performing warehouse and delivery services.  Wang Decl. Ex. 2 (payroll

9  records from 4/08-3/09); Ulin Depo. 8, 27; Magidish Depo. 51.

10       **A.      Plaintiff's Work Schedule**

11             **1.      Defendants' Version of the Facts**

12       Defendants claim that Plaintiff's regular work schedule was generally five days a week with

13  two days off.  See R. Hernandez Depo. 54 (he thinks Plaintiff worked 5 days a week); Jimenez

14  Depo. 25, 30, 44.  From April 2005 to April 2008, Plaintiff had Mondays and Saturdays off.

15  Magidish Decl. ¶¶ 4-5, Ex. D.  From April 2008 to February 27, 2009, he had Wednesdays,

16  Saturdays and Sundays off.  Magidish Decl. ¶¶ 4-5, Ex. D; Hernandez Depo. 53-55.  According to

17  Defendants, Plaintiff generally reported to the retail store for work at 9:00 a.m., took a one-hour

18  break for breakfast until 10:00 a.m., and then worked in the warehouse until 6:00 p.m. with a one-

19  hour lunch at 1:00 p.m.  Magidish Decl. ¶ 4; Hernandez Depo. 24, 36, 99-100; Magidish Depo. at

20  65, 70, 72, 98-99, 101, 124; Jimenez Depo. at 23, 78, 99; Wang Dec. Exh. 5 (Defendant's Response

21  to Interrogatory No. 2).  Thus, according to Defendants, he generally worked seven hours per day.

22  Mr. Magidish testified that Plaintiff's fixed daily salary compensated him for seven hours of work,

23  and not for any additional work.  Magidish Depo. at 94.

24       The one-hour breakfast break in the morning allowed orders and work to be organized for the

25  day.  Magidish Depo. 52; Hernandez Depo. 24.  An assistant, Yesika Jimenez, and a

26  manager, Roberto Hernandez, coordinated the schedule for other workers and recorded who

27  reported for work.  Magidish Depo. 39-40; Hernandez Depo. 13, 23, 25; Jimenez Depo. 27.  Mr.

28  Magidish called in to determine who reported for work every day and recorded this information on a

United States District Court
For the Northern District of California

1  separate calendar.  Magidish Decl.  ¶ 5, Ex. D; Magidish Depo. 68; Hernandez Depo. 67-68, 107.

2  Plaintiff sometimes arrived for work after 9 a.m.  Magidish Depo. 72; Hernandez Depo. 89.

3          Generally, at around 10 a.m., Plaintiff and other warehouse workers traveled from the

4  Lovell's retail store near Union Square to the warehouse on Tennessee Street.  Magidish Depo. 38,

5  65; Jimenez Depo. 22.  Plaintiff occasionally departed from the Lovell's store earlier than 10 a.m. to

6  go on a delivery.  R. Hernandez Depo. 102. The warehouse opened at 10 a.m. and deliveries were

7  not accepted there prior to this time.  Magidish Depo. 102.  Deliveries were completed by 4 p.m.,

8  and the warehouse closed at 6 p.m.  Magidish Depo. 59; Jimenez Depo. 100.  The warehouse was

9  sometimes closed on Sundays, in which case Plaintiff might work in the store or in the warehouse,

10 but he primarily worked in the warehouse.  Hernandez Depo. 55-56; Jimenez Depo. 22.  Regardless

11 of where he worked on Sundays, according to Defendants, Plaintiff's workday ended at 6 p.m.

12 Magidish Depo. 74-75.

13         During the last two years of employment, Plaintiff worked a reduced schedule.  Jimenez

14 Depo. at 79:6-7.  Plaintiff worked other jobs and also took classes while employed by Lovell's. Ulin

15 Depo. at 27, 30; Juan Carlos Depo. 71-72; Jimenez Depo. 75; Buchanan Decl. Ex. H (Response to

16 Interrogatories, No. 5).

17                    2.      **Plaintiff's Version of the Facts**

18                            a.      **Hours Worked**

19         Plaintiff claims that his regular work hours were approximately 12 hours per day, from 9:00

20 a.m. to 9:00 p.m. Ulin Depo. 17 (was initially told he would work from 9-9), 101-102 (worked 12

21 hours a day); Wang Decl. Ex. 4 (Plaintiff's discovery responses) (regular hours from Monday-

22 Saturday were 9-9 and 10-7 if he worked on Sunday).  Plaintiff disputes that he was allowed a one-

23 hour breakfast break at the start of each workday.  Ulin Depo. 107.  Plaintiff points out that, during

24 his deposition, Mr. Magadish explained that notes listing the days worked by Plaintiff containing the

25 number "9" meant that Plaintiff was at work for nine hours,  not the seven hours he claimed

26 elsewhere.  Wang Dec. Ex. 7 (sampling of sheets produced by Mr. Magadish)*;* Magidish Depo. 92.

27 Plaintiff further points out that Ms. Jimenez, whose testimony Defendants rely on in part as evidence

28 of Plaintiff's work schedule, was admittedly sometimes not in the store to see when Plaintiff arrived

**United States District Court**

For the Northern District of California

1    and could not say whether or not he had been working prior to her arrival at 10:00 a.m.  Jimenez

2    Depo. 22-23.  Additionally, manager Roberto Hernandez admitted that his memory of the days

3    worked by Plaintiff was only 40 percent accurate.  R. Hernandez Depo. 54-55.  Mr. Hernandez also

4    testified that, in contrast to Mr. Magidish's claim that work was never performed between 9 a.m. and

5    10 a.m. during the alleged coffee break, warehouse workers would often be out on delivery in the

6    morning from 9:00 until 11:00 or 12:00 and he did not know if they took a break to eat during that

7    time.  Id. at 102.

8         Mr. Magidish testified that Plaintiff's fixed daily salary compensated him for seven hours of

9    work, and not for any additional work.  Magidish Depo. 94.  Therefore, Plaintiff reasons that, if he

10   did not regularly receive a one-hour coffee break in the morning (which is disputed), then even

11   taking Defendants' claim that Plaintiff's regular schedule was from 9 a.m. to 6 p.m. as true, the

12   length of his work day and entitlement to overtime remains in dispute.  However, this would only be

13   true if Plaintiff also did not receive a one hour lunch break, as discussed below.

14                            **b.    Days Worked**

15        In addition to disputing the number of hours worked per day, there is also a dispute over the

16   number of days worked per week.  Plaintiff contends that for much of his employment he worked a

17   regular schedule of six days per week.  Ulin Depo. 102 (worked 6 days a week in 2005 through

18   2007), 59 (had three days off in 2008), 102-103 (worked 5 days a week in 2008 but also performed

19   one day of work a week at Mr. Magidish's residence), 103 (worked 4 days a week); but see

20   Magidish Decl. ¶ 4-5, Ex. D.  Plaintiff points out inconsistencies in the testimony of Defendants'

21   employees about the number of days he worked.  See Carlos Hernandez Depo. 40 (thinks

22   "everyone" worked six days a week during period from 2003-2006); Jimenez Depo. at 26 (no one

23   worked more than five days per week) compared with Jimenez Depo. at 76-77 ("Well, maybe they

24   worked six days a week a few times, but it was not every week. I don't know.") and Jimenez Depo.

25   79 (Plaintiff worked 4 days a week or fewer during last two years of employment); R. Hernandez

26   Depo. 54 (thinks Plaintiff worked five days a week) compared with R. Hernandez Depo. 66 (does

27   not remember if Plaintiff ever worked more than five days a week).

28

**United States District Court**
For the Northern District of California

**B.     Plaintiff's Compensation**

It is undisputed that Plaintiff was paid a set amount per day.  Ulin Depo. 32.  He initially received $65 per day. Ulin Depo. 65, 133.  In 2006, Plaintiff's pay rate was increased to $70 per day. Id.  In 2007, Plaintiff's pay was again raised to $75 per day and it remained the same until the termination of his employment. Ulin Depo. 35, 133; Magidish  Depo. 77.  It is also undisputed that Plaintiff received this daily salary for each day he worked at Lovell's, and that he was regularly paid bi-monthly.  Ulin Depo. 26, 31, 36, 81; Opp. at 12.  Plaintiff received his regular pay in an envelope given to him by Roberto Hernandez or Yesika Jimenez. Ulin Depo. 25.  The envelopes generally had a calculation written on them.  See Buchanan Decl. Ex. F.  The amount of pay was based upon the number of days worked.  Magidish Depo. 67; Jimenez Depo. 31.[1]

However, according to Defendants, the number of days written on the envelopes was not always accurate.  Hernandez Depo. 107.  For example, they claim that Plaintiff sometimes received additional cash for work in excess of the scheduled seven hours per day. Ulin Depo. at 25; Juan Carlos Depo. 27; Magidish Decl. ¶ 7.  Plaintiff was sometimes credited with extra days and received extra pay when he went on out-of-state trips for customer deliveries.  Ulin Depo. 33-34; Jimenez Depo. 33; 43; Magidish Decl. ¶¶ 6-7. Plaintiff was paid extra if he worked later than his regular scheduled hours. Magidish Depo. 93-94, 142-145.  Plaintiff also received additional pay for construction work that he performed separately for Mr. Magidish personally. Jimenez Depo. 45. However, there is no record of these additional cash payments.  Magidish Depo. 93-94.

**C.     Break Periods**

It is undisputed that Plaintiff was free to take breaks during work hours, and sometimes took breaks for personal reasons.  Ulin Depo. 48-49, 52, 109; Juan Carlos Depo. 74 (no one told Plaintiff he could not take a break).  Plaintiff's testimony about when he took morning breaks is somewhat inconsistent.  Ulin Depo. 8, 106 (throughout January 2005 he took regular coffee breaks at 10 a.m.,

---

[1] Plaintiff produced 38 of the 96 bi-weekly envelopes he should have received during the four years of his employment.  Jimenez Depo. 34; 53.  Defendants argue that he only produced the envelopes most favorable to his position, and that his claim that these are all of the documents he has relating to his employment is not credible because he trained as an accountant in Guatemala and retained all cash remittance receipts for transmissions to Guatemala.  See Buchanan Decl. Ex. H (Response to Request for Production of Documents); Ulin Depo. 114-117, 136.  However, neither the completeness of Plaintiff's document production nor his credibility are appropriate issues for summary judgment.

though he also testified that he was not even employed until July 2005); Ulin Depo. 108-109 (he did not take breaks throughout 2008).

### D. Meal Periods

Plaintiff had a lunch break every day that he worked at Lovell's.  Ulin Depo. 52.  A co-worker would bring back food from a restaurant and the employees ate together.  Ulin Depo. 54; Juan Carlos Depo. 75-76.  Plaintiff claims that his lunch break lasted from 15 to 20 minutes to 40 minutes at the most.  Ulin Depo. 54-55.; cf. Juan Carlos Depo. (took employees a "good while" to eat lunch).  Lovell's policy was for employees to take a one-hour lunch break, and a manager generally called the warehouse to confirm that the workers were starting their lunch.  Magidish Depo. 119.  However, Ms. Jiminez testified that the warehouse workers did not call to check in at the end of their lunch so it was unknown how long they were out for lunch.  Jimenez Depo. 90-91.

### E.      Plaintiff's Job Duties

Plaintiff's job duties at the warehouse included packing items for delivery and assisting with deliveries.  Magidish Depo. 51:7-11.  Plaintiff also sometimes accompanied a driver to make out-of-state deliveries for Lovell's.  Ulin Depo. 33; Magidish Depo. 164, 166; Jimenez Depo. 82-83.  He went on many delivery trips during his employment, including more than 10 trips during his last year of employment, eight of which were outside of the Bay Area.  Jimenez Depo. at 32; Jimenez Decl. ¶ 3, Ex. B. He traveled to Texas, Houston, Dallas, Florida, Georgia, Utah, Nevada and Arizona while making deliveries for customers.  Jimenez Depo. 33.  In 2008, he also traveled to Missouri, Kentucky, George, Colorado, Louisiana.  Jimenez Decl. ¶ 3, Ex. B.

### F.      Plaintiff's Working Conditions

Plaintiff was sad to stop working at Lovell's because he enjoyed working there.  The work was fun and there was a spirit of teamwork. Ulin Depo. 39-40; 60.  Plaintiff considered Mr. Magidish a good boss who was generous with financial assistance and provided Plaintiff with clothes and shoes.  Ulin Depo at 38; 40-42.  Plaintiff's hours were eliminated on February 27, 2009.  Ulin Depo. 59-60.  Defendants found Plaintiff a new job.  Ulin Depo. 60; Magidish Decl. ¶ 7.

**United States District Court**
For the Northern District of California

### G.      Plaintiff's Work Authorization Status

Defendants contend that Plaintiff submitted false work authorization documents to his employer when he completed Form I-9, his Employment Eligibility Verification form. Jimenez Decl. at ¶ 2, Ex. A; Marachi Decl. ¶¶ 2-6, Ex. A.  Defendants have submitted the declaration of an immigration attorney who has concluded, based on his own investigation, that Plaintiff was not working legally in the United States when he worked at Lovell's.  Marachi Decl. at ¶ 6.  Plaintiff has not challenged this declaration or otherwise attempted to counter or respond to it.

### H.      Mr. Madigish's Involvement In Plaintiff's Employment

Mr. Magidish was responsible for posting, calculating, measuring, estimating, recording, or otherwise determining the hours worked by Plaintiff, and wages paid him.  Wang Decl. Ex. 5 (Defendants' Response to Plaintiff's Interrogatory No. 7).  Mr. Magidish also authorized and issued payments to Plaintiff. Wang Decl., Exh. 5 (Defendants' Response to Plaintiff's Interrogatory No. 8).  Mr. Magidish supervised Plaintiff's work, and was  responsible for recruiting, hiring, firing, disciplining, assigning jobs and setting wages for Plaintiff.  Wang Decl., Exh. 5 (Defendants' Response to Plaintiff's Interrogatory Nos. 9, 10).

### I.      Defendants' Knowledge

Mr. Magidish knew that if Plaintiff worked in excess of five days per week, overtime would be incurred.  See Magidish Depo. 95-97 ("I know that if he worked five days in those periods; so it's ten days. Ten days he gets $75, but after that he has to get time and a half; that's the law. But I don't remember if he worked 13 days straight. That's what my understanding."); Magidish Depo. 133 (stating that if Plaintiff worked 11 days and therefore exceeded 40 hours, he would have to pay him overtime).  Additionally, Mr. Magidish admitted to usually "tipping" employees for "overtime and appreciation" in cash and providing free lunch if they worked later than 6:00 p.m, the amount depending on his mood.  Magidish Depo. 143-145.

## II.    LEGAL STANDARD

Summary judgment shall be granted if "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56(c).  Material facts

7

**United States District Court**
For the Northern District of California

1   are those which may affect the outcome of the case.  See Anderson v. Liberty Lobby,

2   Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient

3   evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.  The court must view

4   the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable

5   inferences to be drawn from those facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

6   U.S. 574, 587 (1986).  The court must not weigh the evidence or determine the truth of the matter,

7   but only determine whether there is a genuine issue for trial.  Balint v. Carson City, 180 F.3d 1047,

8   1054 (9th Cir. 1999).  The evidence presented by the parties must be admissible. Fed. R. Civ. Proc.

9   56(e).

10          A party seeking summary judgment bears the initial burden of informing the court of the

11   basis for its motion, and of identifying those portions of the pleadings and discovery responses that

12   demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317,

13   323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively

14   demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue

15   where the nonmoving party will bear the burden of proof at trial, the moving party can prevail

16   merely by pointing out to the district court that there is an absence of evidence to support the

17   nonmoving party's case.  Id.

18          If the moving party meets its initial burden, the opposing party "may not rely merely on

19   allegations or denials in its own pleading;" rather, it must set forth "specific facts showing a genuine

20   issue for trial."  See Fed. R. Civ. P. 56(e)(2); Anderson, 477 U.S. at 250.  "Conclusory, speculative

21   testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat

22   summary judgment."  Soremekun v. Thrifty Payless, Inc. 509 F.3d 978, 984 (9th Cir. 2007); see also

23   Nelson v. Pima Community College, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and

24   speculation do not create a factual dispute for purposes of summary judgment").  If the nonmoving

25   party fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment as

26   a matter of law."  Celotex, 477 U.S. at 323.

27

28

**III.    ANALYSIS**

 **A.    Defendants' Motion for Summary Judgment or Summary Adjudication**

  **1.    Plaintiff's Immigration Status**

 Defendants argue that Plaintiff's submission of false documents at the time of his employment precludes any recovery of overtime pay.  Defendants point to the declaration of immigration attorney Jason Marachi, who reviewed the documents that Plaintiff submitted to Defendants at the time of his employment, performed an independent investigation, and concluded that Plaintiff submitted false work authorization documents to his employer and was not working legally in the United States while he worked for Defendants.  See generally Marachi Decl.   Plaintiff has not raised any factual dispute on this issue, but disagrees that his recovery of damages is affected.

 Defendants rely primarily on Reyes v. Van Elk, Ltd., 148 Cal. App. 4th 604, 611 (2007), where the court stated that:

> Thus, as presented to this court, this case does not involve a situation where undocumented workers submitted false work authorization documents to a prospective employer. (See e.g., Ulloa v. Al's All Tree Service, Inc. (Dist.Ct.2003) 2 Misc.3d 262, 768 N.Y.S.2d 556, 558 ["The Court also notes in passing that, if there had been proof in this case that the Plaintiff had obtained his employment by tendering false documents (activity that is explicitly unlawful under IRCA), Hoffman would require that the wage claim [for unpaid wages] be disallowed in its entirety."].) However, the issue of whether Hoffman requires that a wage claim be denied if an employee submitted false authorization documents is not before this court.

However, Reyes expressly did not reach the issue raised by Defendants, and therefore is of little help to them.  Hoffman Plastic Components, Inc. v. National Labor Relations Board, 535 U.S. 137 (2002), cited by Reyes, foreclosed an award of backpay under the National Labor Relations Act to a worker who had submitted false documents to his employer because the Court found that an award of backpay  "for years of work not performed, for wages that could not lawfully have been earned, and for a job obtained in the first instance by criminal fraud" would run counter to immigration policy.  Id. at 149, 151.  Hoffman did not involve a case such as this, where Plaintiff claims to have already performed the work in question and seeks payment for that work, and so it is also not directly on point.

United States District Court

For the Northern District of California

1       Plaintiff argues that regardless of whether he presented false documents and was working

2  illegally, he is entitled to recover his earned wages.  Plaintiff notes that the cases interpreting

3  <u>Hoffman</u> have not applied it to bar recovery of wages already earned.  <u>See, e.g., Singh v. Jutla &</u>

4  <u>C.D. & R's Oil, Inc.</u>, 214 F.Supp.2d 1056, 1061 (N.D. Cal. 2002) (Breyer, J.) (quoting <u>Flores v.</u>

5  <u>Albertsons, Inc.</u>, 2002 WL 1163623 (C.D.Cal.2002) ("<u>Hoffman</u> does not establish that an award of

6  unpaid wages to undocumented workers for work actually performed runs counter to IRCA."); Opp.

7  at 19 (citing cases).

8       The case cited in <u>Reyes</u>, <u>Ulloa v. Al's All Tree Service, Inc.</u>,768 N.Y.S.2d 556, 558 (Dist.Ct.

9  2003), does not mandate a contrary result.  <u>Ulloa</u> is New York small claims court decision where the

10  Court limited an undocumented worker's recovery of unpaid wages to the minimum wage, and then

11  noted "in passing that, if there had been proof in this case that the Plaintiff had obtained his

12  employment by tendering false documents (activity that is explicitly unlawful under IRCA),

13  <u>Hoffman</u> would require that the wage claim [for unpaid wages] be disallowed in its entirety."  No

14  case has followed this portion of <u>Ulloa</u>, or otherwise affirmatively held than an undocumented

15  worker is precluded from recovering wages for work already performed simply because he

16  submitted false documents at the time of employment.  Indeed, a higher New York court has

17  expressly rejected <u>Ulloa</u>'s dicta, and instead held that: "If federal courts ban discovery on

18  immigration status in unpaid wages cases, the use of fraudulent documents on immigration status to

19  gain employment in unpaid wages cases is likewise irrelevant. The only crucial issue is whether the

20  undocumented worker performed services for which the worker deserves compensation. If so, public

21  policy requires payment so that employers do not intentionally hire undocumented workers for the

22  express purpose of citing the workers' undocumented status or their use of fraudulent documents as

23  a way to avoid payment of wages."  <u>Pineda v. Kel-Tech Const., Inc</u>., 832 N.Y.S.2d 386, 396

24  (N.Y.Sup. 2007).

25       At oral argument, Defendants contended that, even if Plaintiff's employment status does not

26  require that *all* of his claims be disallowed, <u>Hoffman</u> precludes an award of liquidated damages

27  under the FLSA.  Defendants' argument appears to be that FLSA liquidated damages are akin to the

28  backpay for work not performed due to wrongful termination at issue in <u>Hoffman</u>, in that they go

beyond simply compensating for past work, and therefore federal immigration policy makes this remedy unavailable to Plaintiff because it would reward violation of immigration laws while punishing the employer.  There is no case expressly addressing the issue of whether FLSA liquidated damages are available to a plaintiff who presented false documents to his employer.  While a close question, and one that pits important governmental policies relating to labor and immigration against each other, the Court's interpretation of the statute and the caselaw runs counter to Defendants' position.

First, the plain language of the FLSA mandates liquidated damages in an amount equal to the unpaid wages unless the employer "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended," in which case "the court may, in its sound discretion, award no liquidated damages or award any amount thereof . . ." 29 U.S.C. § 260.  "Under 29 U.S.C. § 260, the employer has the burden of establishing subjective and objective good faith in its violation of the FLSA."  Local 246 Utility Workers Union of America v. Southern California Edison Co., 83 F.3d 292, 297-298 (9th Cir. 1996).  Thus, the plain language of the FLSA's liquidated damages provision focuses exclusively on the employer's conduct, not the employee's conduct.  There is nothing in the language of the statute that allows the Court to take *Plaintiff's* misconduct into account in determining whether to award liquidated damages.  To the contrary, the imposition of liquidated damages is mandatory unless the *employer* establishes its own good faith.

Second, under the FLSA, " liquidated damages represent compensation, and not a penalty. Double damages are the norm, single damages the exception." Local 246 Util. Workers Union v. S. Cal. Edison Co., 83 F.3d 292, 297 (9th Cir.1996); see also Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 584 (1942) (liquidated damages compensate for damages too obscure and difficult of proof), superceded by statute on other grounds; Herman v. RSR Sec. Services Ltd., 172 F.3d 132, 142 (2d Cir. 1999) ("Liquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA").  Congress provided for liquidated damages because it

recognized that those protected by federal wage and hour laws would have the most difficulty

maintaining a minimum standard of living without receiving minimum and overtime wages and thus

"that double payment must be made in the event of delay in order to insure restoration of the worker

to that minimum standard of well-being." See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707

(1945).

Following Hoffman, "[c]ourts have distinguished between awards of post-termination back

pay for work not actually performed and awards of unpaid wages pursuant to the Fair Labor

Standards Act ('FLSA')." Zeng Liu v. Donna Karan Intern., Inc., 207 F.Supp.2d 191, 192

(S.D.N.Y. 2002); see also Widjaja v. Kang Yue USA Corp., 2010 WL 2132068, *1 (E.D.N.Y.

2010).  In Flores v. Amigon, 233 F.Supp.2d 462 (E.D.N.Y. 2002), the court held that Hoffman did

not apply to FLSA cases in which workers sought pay for work actually performed, and that,

"enforcing the FLSA's provisions requiring employers to pay proper wages to undocumented aliens

when the work has been performed actually furthers the goal of the IRCA" because if the FLSA did

not apply to undocumented aliens, employers would have a greater incentive to hire illegal aliens

with the knowledge that they could not be sued for violating minimum wage requirements.  While

the interest in deterring employers from knowingly hiring undocumented workers in order to avoid

lawsuits for wage violations does not apply when an employee uses false documents to successfully

deceive an unknowing employer who attempted to comply with immigration law, the interest in

deterrence does apply when the employer had reason to suspect or knew that the employee was not

authorized to work in the United States but hired him anyway, colluding in the use of false

documents.  The record here is silent as to whether Defendants were successfully deceived as to

Plaintiff's authorization to work or instead knew or suspected that his documents were falsified.

Unlike the backpay for hours not worked at issue in Hoffman, here the liquidated damages

are a form of compensation for time worked that cannot otherwise be calculated.  See also Singh v.

Jutla & C.D. & R's Oil, Inc., 214 F. Supp. 2d 1056 (N.D Cal. 2002) (Breyer, J.) (stating that

Hoffman did not address remedies of compensatory and punitive damages, and holding that

undocumented employee could proceed with FLSA retaliation claim); Galdames v. N&D Investment

Corp., 2008 WL 4372889 (S.D.Fla. Sept. 24, 2008) (finding that Hoffman did not overrule previous

rule that an "undocumented worked may bring claims for unpaid wages and liquidated damages" for

United States District Court
For the Northern District of California

work already performed); <u>Renteria v. Italia Foods, Inc</u>., 2003 WL 21995190, *5-6 (N.D.Ill. 2003) (striking FLSA backpay and frontpay claims in light of <u>Hoffman</u>/IRCA, but allowing claim for compensatory damages).

While none of the cases cited above involve an employee who affirmatively presented false documents, as opposed to simply being undocumented, <u>Hoffman</u> did not preclude compensatory damages for time already worked on the basis that the employee presented false documents. While the <u>Hoffman</u> Court was certainly concerned about the fact that the plaintiff had criminally violated IRCA by presenting false documents and was therefore never authorized to work in the United States, it also focused on the facts that: (1) the plaintiff had not actually performed the work for which he was seeking backpay, (2) he was only entitled to the backpay award by remaining in the country illegally, and (3) he could not mitigate damages as required without triggering further a IRCA violation. Here, by contrast, no further employment by Plaintiff is at issue as he only seeks compensation for work performed before his termination by Defendants and the issue of mitigating damages is not present, unlike in <u>Hoffman</u>. Further, as the <u>Hoffman</u> Court held, the NLRB's other "'traditional remedies' [were] sufficient to effectuate national labor policy regardless of whether the 'spur and catalyst' of backpay accompanies them." In contrast, FLSA liquidated damages are not a "spur and catalyst," but instead numerous courts have found that they are intended as compensation for unpaid wages already earned but too difficult to calculate. Therefore, Defendants' Motion is DENIED on this issue.

## 2. Has Plaintiff Met His Burden Regarding Defendants' Violation of the California Labor Code or the FLSA?

An employee bringing an overtime claim under the Fair Labor Standards Act ("FLSA") has the burden of proving that he performed work for which he was not properly compensated. <u>Anderson v. Mt. Clemens Pottery</u>, 328 U.S. 680, 687-88 (1946). In view of the remedial purpose of the FLSA and the employer's statutory obligation to keep proper records of wages, hours and other conditions and practices of employment, this burden is not to be "an impossible hurdle for the employee." <u>Id</u>. "[W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, . . . the solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated

work.  Such a result would place a premium on an employer's failure to keep proper records . . .; it
would allow the employer to keep the benefits of an employee's labors without paying due
compensation as contemplated by the [FLSA]."  Brock v. Seto, 790 F.2d 1446, 1448 (9th Cir. 1986)
(quoting Anderson, 328 U.S. at 688).

"[A]n employee has carried out his burden if he proves that he has in fact performed work for
which he was improperly compensated and if he produces sufficient evidence to show the amount
and extent of that work *as a matter of a just and reasonable inference*." Id. (emphasis in original).
The burden then shifts to the employer to show the precise number of hours worked or to present
evidence sufficient to negate "the reasonableness of the inference to be drawn from the employee's
evidence." Id.  If the employer fails to make such a showing, the court "may then award damages to
the employee, *even though the result be only approximate*." Id. (emphasis in original).  "[A]n award
of back wages will not be barred for imprecision where it arises from the employer's failure to keep
records as required by the FLSA." Id.; see also Hernandez v. Mendoza, 199 Cal. App. 3d 721
(1988) (quoting and applying standard set forth in Brock in connection with California Labor Code
claim).

Defendants argue that Plaintiff has not met his initial burden of showing that he has in fact
performed work for which he was improperly compensated and has not produced sufficient evidence
to show the amount and extent of that work as a matter of a just and reasonable inference.
Specifically, they argue that he only produced 38 out of 96 pay envelopes, and he did not produce
records relating to paychecks he received from March 2008 until his termination approximately a
year later.  In addition to this alleged evidentiary deficiency, Defendants attack Plaintiff's
credibility.  They argue that Plaintiff's testimony that he worked more than five days a week is not
credible in light of other testimony that his regular schedule was five days a week, and that in any
event he admitted that he was paid his daily rate of pay for all days worked.  Ulin Depo. 31.
Defendants also argue that Plaintiff's testimony that he worked twelve hours a day is not credible
because he worked in the warehouse which closed at 6 p.m. every day and admitted that he worked
from 10 a.m. to 7 p.m. (nine hours) on Sundays.  See Buchanan Decl. Ex. H (Response to
Interrogatory No. 1).  Defendants also point out that Plaintiff worked at another job and took classes
during his employment, and state that his interrogatory response is somehow inconsistent with his

1  deposition testimony on this topic, but do not explain the inconsistency or why it is relevant.  In light

2  of the foregoing, they contend that Plaintiff's evidence is conflicting and it is "incredible" that he

3  worked the hours he claims, especially since he took meal and rest breaks.  On summary judgment,

4  the Court may not weigh the evidence or make credibility determinations, so these arguments are

5  unpersuasive.

6        Plaintiff counters by pointing to the various factual disputes (detailed in the Factual

7  Background section above) relating to the hours and days he worked and his compensation for that

8  time.  Defendants respond that Plaintiff's Opposition fails to satisfy his burden because he did not

9  submit a declaration setting forth the basis of his claims for overtime and has not otherwise disclosed

10  any details of his claim during discovery.  For example, in response to an interrogatory requesting

11  that Plaintiff state the hours worked on each day he worked for Defendants, Plaintiff objected and

12  stated that his "normal work hours of that [*sic*] days Monday through Saturday were from 9:00 a.m.

13  to 9:00 p.m. and on Sundays from 10:00 a.m. to 7:00 p.m."  Buchanan Decl Ex. H at 2.  Elsewhere

14  he testified that he worked 12 hours a day every day, but was unable to specify the number of days

15  he worked overtime in any given year.  Ulin Depo. at 99-101. They contend that, "[s]ince this is a

16  wage and hour case, there is an expectation that Plaintiff would present some sort of calendars, or

17  other detailed information, for each month he worked at Lovell's, identifying the days of the week

18  he worked and the hours he worked."  Reply at 4-5.

19        While Plaintiff's evidence is scarcely overwhelming and he may face credibility issues at

20  trial, he has raised a triable issue of fact as to whether he performed work for which he was

21  improperly compensated.  Further, because Defendants admittedly did not keep records of their

22  wage payments to Plaintiff as required, Plaintiff's production of at least some of the pay envelopes

23  and testimony about his work schedule is sufficient evidence of the amount and extent of that work

24  to permit a just and reasonable inference of the amount he is owed, at least as to Plaintiff's initial

25  burden on summary judgment.

26        **3.**    **Have Defendants Met Their Burden of Negating A Triable Issue As To
27  The Reasonableness of the Inference to Be Drawn From Plaintiff's
Evidence?**

28        Defendants argue that, even if Plaintiff has met his initial burden, their evidence negates the

reasonableness of any inference to be drawn from Plaintiff's evidence.  Specifically, they point to

**United States District Court**
For the Northern District of California

15

United States District Court

For the Northern District of California

evidence that his regular work schedule was five days a week from 9 a.m. to 6 p.m. with an hour off for breakfast and lunch, and later four days a week with reduced hours. <u>See</u> Magidish Decl. ¶ 4-5, Ex. D. Further, they contend that Plaintiff regularly went on out of state trips and was paid for every day he was on an out of state trip. <u>Id</u>. at ¶ 6. He was sometimes paid extra in cash if he worked beyond his regular hours. <u>Id</u>. at ¶ 7. They contend that this evidence is sufficient as a matter of law to negate any reasonable inference to be drawn from Plaintiff's evidence.

Defendants also argue that some of Plaintiff's disputed facts are immaterial. For example, according to Defendants, regardless of whether Plaintiff received a full hour for breakfast or not, he either worked seven or eight hours, neither of which creates an overtime obligation. However, Defendants ignore the fact that there are also questions about whether Plaintiff received a full hour for lunch (he testified it was generally 15-20 minutes). Even taking as true Defendants' position that he worked from 9 a.m. to 6 p.m., if he did not have at least 30 minutes at both breakfast and lunch, or a full hour at one of those times, he still worked more than eight hours a day. Thus, the factual questions about the length of his break periods are material. With respect to meal periods, Defendants also argue that "the overwhelming evidence is that Plaintiff and his coworkers enjoyed a leisurely lunch break every day" and that Plaintiff's claim to the contrary is "incredible." Reply at 7-8. However, regardless of whether Plaintiff's version of the facts is "incredible" to Defendants, there is a disputed fact about how long his lunch was and this fact is material.

Defendants also attack Plaintiff's reliance on the deposition testimony of his co-worker Juan Carlos Hernandez, and argue that Mr. Carlos' testimony does not support Plaintiff's claim that he regularly worked six days a week. Reply at. 7. However, Mr. Carlos did testify that he worked six days a week in 2003, thinks he worked six days a week in 2004, could not recall how many days a week he worked in 2005, could not recall but later confirmed that "everybody" worked six days a week in 2006, worked five days a week in 2007, worked three days a week in 2008, worked six days a week in 2009, and is currently working six days a week. J. C. Hernandez Depo. 39-40. This testimony, coupled with Plaintiff's own testimony, creates a triable issue of fact as to the number of days per week Plaintiff worked.

Defendants next argue that there is no dispute that Plaintiff received extra compensation for additional work. However, none of the citations to Plaintiff's deposition that they list support this

16

1    contention, and instead indicate that he worked extra and was told he was going to be paid extra but

2    was not. <u>See</u> Ulin Depo. at 34-35.  In contrast, Mr. Magadish contends that Plaintiff was paid extra

3    for extra work.  Magidish Decl. ¶ 7.  This is a triable issue of fact.  Oddly, Defendants also argue

4    that Plaintiff has failed to submit any evidence of additional cash payments he received, even though

5    he contends that he was *not* paid extra for additional work and Defendants admit that they do not

6    have any record of these additional payments either.

7         In sum, Plaintiff contends that he worked overtime and was not compensated for it;

8    Defendants say he did not work overtime and, if he did, he was compensated.  These are

9    quintessential triable issues of fact.  Further, even Defendants' evidence is unclear as to whether,

10   even if he was paid extra for time worked, how much he was paid and whether it was sufficient to

11   compensate him for the hours worked.  <u>See</u> Magidish Depo. at 143-154 (the amount of cash he paid

12   for overtime work varied and depended on his mood and there is no written record of the cash

13   payments).  For all of these reasons, summary adjudication of Plaintiff's overtime claim is DENIED.

**4.     California Labor Code Violations**

14

15        In addition to the issues discussed above, Defendants' motion also seeks summary

16   adjudication of Plaintiff's California Labor Code claims, which include section 510 (overtime pay),

17   section 226 (accurate and complete wage statements), and section 226.7 (meal and rest periods).

**a.     Overtime Pay (Labor Code § 501)**

18

19        Defendants argue that, even if Plaintiff is entitled to overtime pay pursuant to Labor Code

20   section 510, section 1194.2(a) precludes the recovery of any liquidated damages.  <u>See</u> Cal. Labor

21   Code § 1194.2(a) ("Nothing in this subdivision shall be construed to authorize the recovery of

22   liquidated damages for failure to pay overtime compensation.").  Plaintiff did not counter this point

23   in his Opposition, and is precluded from seeking liquidated damages for California Labor Code

24   violations.  Defendants also argue that Plaintiff's claim for violation of California labor laws being

25   pursued through California Business & Professions Code section 17200 is subject to a four year

26   statute of limitations, limiting Plaintiffs damages to the time period from July 13, 2005 to the date of

27   Plaintiff's termination.  <u>See Cortez v. Purcolator Air Filter</u>, 23 Cal. 4th 163, 178-79 (2000).  Plaintiff

28   does not oppose this point, and instead readily endorses it.  The Court GRANTS summary

adjudication of both of these issues.

17

United States District Court
For the Northern District of California

**b.** **Exemption for Transportation Industry Employees**

Defendants argue that Plaintiff was exempt from statutory overtime provisions under California's Industrial Welfare Commission Order No. 9-2001 Regulating Wages, Hours and Working Conditions in the Transportation Industry.  See Buchanan Decl. Ex. G.  Section 3(L)(1) of this Order exempts employees whose hours of service are regulated by the United States Department of Transportation pursuant to 49 C.F.R. §§ 395.1-13 (Hours of Service Drivers) from its overtime limitations.[2]  This exemption is applicable to employees "whose work involved engagement in activities consisting wholly or in part of a class of work which is defined: (i) As that of a driver, driver's helper, loader, or mechanic, and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act."  29 C.F.R. § 782.2.  Defendants have the burden of proving that the exemption applies, and exemptions are narrowly construed against employers.  See Bothell v. Phase Metrics, Inc., 299 F.3d 1120, 1125 (9th Cir. 2002) ("FLSA exemptions are to be narrowly construed against . . . employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit"); see also Crooker v. Sexton Motors, Inc., 469 F.2d 206, 211 (1st Cir. 1972) (employer has burden of proof to establish the particular weeks in which employee performed duties bringing him within the exemption).  Therefore, to prevail on this issue in the context of their motion for summary judgment, Defendants must show that there is no triable issue of fact and the exemption applies to Plaintiff as a matter of law.

Defendants argue without explanation that Plaintiff falls within the motor carrier exemption because "[a] substantial portion of Plaintiff's job duties included preparing and packing for delivery in interstate commerce and then accompanying the driver on interstate delivery trips."  Motion at 15. Defendants contend that Plaintiff is not entitled to overtime pay for work performed in this capacity, and that the envelopes produced by Plaintiff that reflect more than 11 or 12 days worked in a pay period show the weeks he made interstate deliveries.  Defendants cite no evidence to support their argument, other than Plaintiff's mention in an unrelated context that he went on a trip outside of California as part of his job.  See Ulin Depo. at 33-34 (he went on a trip and Jessica called when

---

[2] Plaintiff points out that Wage Order No. 7-2001 regulates the mercantile industry and argue that this is the applicable Wage Order.  However, section 3(K) of Order 7-2001 contains an identical motor carrier exemption, so it makes it no difference which Wage Order applies.

United States District Court

For the Northern District of California

1    they were "coming back into California" and told him to go fix a broken light the following day on

2    his day off). Nevertheless, it is undisputed that Plaintiff went on some out of state delivery trips as

3    part of his employment.

4           Plaintiff counters that: (1) Defendants cannot claim the exemption because they did not raise

5    it as an affirmative defense and Plaintiff will be prejudiced if they are allowed to rely on it now; (2)

6    Defendants have failed to present undisputed facts supporting its application; and (3) the exemption

7    would only apply to the weeks Defendants could prove Plaintiff performed exempt work. The Court

8    agrees with Plaintiff on all three points.

9           Numerous courts have held "that the application of an exemption under the Fair Labor

10   Standards Act is a matter of affirmative defense on which the employer has the burden of proof."

11   See Corning Glass Works v. Brennan, 417 U.S. 188, 196-197 (1974). An affirmative defense can be

12   raised for the first time on summary judgment provided that there is no prejudice to the plaintiff.

13   See Healy Tibbitts Construction Co. v. Insurance Co. of North America, 679 F.2d 803 (9th Cir.

14   1982). Here, Plaintiff will be prejudiced if Defendants are allowed to raise the defense at this time

15   because detailed factual questions arise as to the applicability of the motor carrier exemption, which

16   have not been the subject of discovery. For example, because Plaintiff was unaware of this defense,

17   he did not obtain discovery specific to Plaintiff's interstate trips or the details of his in-state trips,

18   and did not attempt to discern which weeks Plaintiff may have been performing work falling within

19   the exemption and which weeks he was not. Defendants do not dispute that they did not specifically

20   plead the exemption as an affirmative defense. Instead, they contend that their Answer broadly

21   denied that the FLSA applies to them and denied any violation of section 501 of the California

22   Labor Code, and their first Affirmative Defense was for failure to state a claim. Defendants do not

23   address Plaintiff's claim of prejudice at all. Defendants will not be allowed to raise the defense at

24   this late date, after discovery has closed, because Plaintiff will be prejudiced as a result.

25          Further, Defendants have not shown that there are no factual questions about the applicability

26   of the exemption, so summary adjudication is unwarranted. Defendants cite no evidence in support

27   of their description of Plaintiff's job duties and do not attempt to explain how those duties match the

28   various requirements of the exemption. See 29 C.F.R. § 782.7. It is therefore unclear whether

Plaintiff performed exempt work at all, and if so to what extent. Without additional evidence or

United States District Court

For the Northern District of California

1   argument by Defendants, summary judgment is inappropriate. Finally, Plaintiff points out that, even

2   if Defendants could raise this argument on summary judgment, and even if they had shown that

3   Plaintiff fell within the exemption, there would still be remaining questions about what weeks

4   Plaintiff performed exempt work. The exemption only applies in those workweeks where he

5   performs exempt activities, 29 C.F.R. § 782.2(b)(4), and Defendants bear the burden of proving

6   when the exemption was applicable. Because Defendants have provided no evidence or argument

7   on this point, summary adjudication is unwarranted for this reason as well.

8                    **c.       Meal and Rest Periods (Labor Code § 226.7)**

9          Defendants argue that all of the evidence in this case reflects that Plaintiff took a lunch break

10  every day and was free to take rest breaks throughout the day. However, there is a dispute about

11  how long Plaintiff's meal breaks were, and whether they complied with the 30 minute requirement

12  set forth in section 11 of the applicable Wage Order. Therefore, summary adjudication of this issue

13  is DENIED.

14                   **d.       Wage Statements (Labor Code § 226)**

15         Defendants contend that "Labor Code section 226 . . . only requires that gross wages be

16  stated," and that the handwritten notes on the envelopes produced by Plaintiff are sufficient to meet

17  this requirement as a matter of law. For the reasons discussed below in connection with Plaintiff's

18  Motion for Summary Adjudication, summary adjudication of this issue is DENIED as to Defendants

19  and GRANTED in favor of Plaintiff. There is no question that the pay envelopes do not meet the

20  requirements of section 226.

21                   **5.       FLSA Claim**

22                   **a.       Overtime Pay**

23         Defendants argue that the statute of limitations for overtime claims under the FLSA is two

24  years, or three years for willful violations, and seek an Order on the applicable statute of limitations.

25  See 29 U.S.C. § 255(a). Pursuant to McLaughlin v. Richland Shoe Co., 486 U.S. 128, 130-131

26  (1988), an employer has not committed a willful violation unless "it knew or showed reckless

27  disregard for the matter of whether its conduct was prohibited by the FLSA." "If an employer acts

28  reasonably in determining its legal obligation, its action cannot be deemed willful . . . . If an

United States District Court
For the Northern District of California

employer acts unreasonably, but not recklessly, in determining its legal obligation, then" it would not be deemed willful.

Defendants present no argument or evidence on the issue of willfulness.  Plaintiff points out that Mr. Magadish  admitted that he knew that if Plaintiff worked in excess of five days per week, overtime would be incurred.  See Magidish Depo. 95-97 ("I know that if he worked five days in those periods; so it's ten days. Ten days he gets $75, but after that he has to get time and a half; that's the law. But I don't remember if he worked 13 days straight. That's what my understanding."); Magidish Depo. 133 (stating that if Plaintiff worked 11 days and therefore exceeded 40 hours, he would have to pay him overtime).  Additionally, Mr. Magidish admitted to usually "tipping" employees in cash and providing free lunch if they worked later than 6:00 p.m, the amount depending on his mood.  Magidish Depo. 143-145.  Given this testimony, Defendants have not met their burden of establishing that the statute of limitations for willful violations does not apply, and Plaintiff has presented some evidence that the violations were willful.  Summary adjudication of this issue is therefore DENIED.

Plaintiff also appears to argue that the four year statute of limitations for California Business & Professions Code § 17200 (the "UCL") is applicable to his FLSA claim.  See Opp. at. 24.  However, Plaintiff cites no law supporting this argument, and it is rejected.  At oral argument, Defendant argued that Plaintiff should not be allowed to recover FLSA liquidated damages beyond the FLSA's two or three year limitations period (i.e., liquidated damages should not be considered restitution that can be recovered under the UCL's four year statute of limitations).  When questioned about this, Plaintiff was unable to cite any cases holding that FLSA liquidated damages are "restitution" under the UCL.  Instead, several courts have found that FLSA liquidated damages are not restitution that can be recovered under the UCL.  See Tomlinson v. Indymac Bank, F.S.B., 359 F.Supp.2d 891, 897 (C.D.Cal. 2005) (FLSA liquidated damages are not a penalty but also not restitutory because they do not return to employees money obtained through an unfair business practice and employees do not have a "vested right" in the liquidated damages); Parks v. Eastwood Ins. Services, 2004 WL 5506690, *1 (C.D.Cal. 2004) (class could seek restitution under the UCL for defendant's failure to properly pay overtime under FLSA, provided their claims were within the UCL's 4-year statute of limitations, but were "limited to recovering restitution for their lost wages,

United States District Court

For the Northern District of California

and they may not recover liquidated damages."). If liability is found, Plaintiff is limited to recovery of FLSA liquidated damages for two or three years depending on willfulness, not four years under the UCL.

Defendants also seek an Order on the issue of the overtime rate of pay for each overtime hour worked. The FLSA requires overtime pay of at least one and a half times the regular rate of pay based on the number of hours worked in a week. 29 U.S.C. § 207(a)(1). An employee's regular rate of pay is calculated by dividing average earnings for a work day by the number of hours actually worked. 29 C.F.R. § 548.3; 29 C.F.R. § 778.109. It is undisputed that Plaintiff's rate of pay ranged from $65 to $75 per day during his employment. Defendants contend that any overtime should be calculated based on an eight hour day, but do not explain why an eight hour day would be used when Mr. Magidish testified that Plaintiff's regular work schedule was seven hours a day and Plaintiff testified that he worked up to twelve hours a day. Plaintiff's Opposition does not address this issue. The Court cannot rule on the proper amount of overtime pay as a matter of law based on the evidence currently before it.

### b.     Motor Carrier Exemption

Defendants also contend that Plaintiff is exempt from overtime requirements under the FLSA because of the motor carrier exemption. For the reasons discussed above in connection with Plaintiff's state law claims, summary adjudication of the motor carrier exemption issue is unwarranted and Plaintiff will be prejudiced if Defendants are allowed to raise this affirmative defense at this time.

### c.     Rest and Meal Periods

Defendants argue that all of the evidence in this case reflects that Plaintiff took a lunch break every day and was free to take rest breaks throughout the day. However, there is a dispute about how long Plaintiff's meal breaks were, and whether they complied with the 30 minute requirement set forth in 29 C.F.R. § 785.19. Therefore summary adjudication of this issue is DENIED.

### d.     Liquidated Damages

The FLSA provides for liquidated damages in an amount equal to the unpaid wages. 29 U.S.C. § 216(b). However, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for

1    believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as

2    amended, the court may, in its sound discretion, award no liquidated damages or award any amount

3    thereof . . ." 29 U.S.C. § 260. "Under 29 U.S.C. § 260, the employer has the burden of establishing

4    subjective and objective good faith in its violation of the FLSA." Local 246 Utility Workers Union

5    of America v. Southern California Edison Co., 83 F.3d 292, 297 -298 (9th Cir. 1996).  Thus,

6    Defendants' burden is to establish that they had "an honest intention to ascertain and follow the

7    dictates of the Act" and had "reasonable grounds for believing that [their] conduct complie[d] with

8    the Act." Id.  "If the employer fails to carry that burden, liquidated damages are mandatory." Id.  If

9    the employer succeeds in carrying the burden, the court may still award liquidated damages in its

10   discretion.  Id. at 298.

11          Defendants argue that they acted in good faith because additional payments were made to

12   compensate for additional time worked, they found Plaintiff a new job when they laid him off, and

13   he was provided with meals and clothing.  They further contend that Plaintiff did not act in good

14   faith because he submitted false employment documents at the time of his employment and should

15   not be entitled to a windfall in the form of liquidated damages.  However, as discussed above, the

16   statute does not examine a plaintiff's culpability for purposes of liquidated damages.

17          Defendants have not put forward any evidence that they honestly believed that their

18   payments to Plaintiff complied with the FLSA or that they had reasonable grounds for this belief.

19   Further, Defendants' contention that they made additional cash payments to compensate Plaintiff for

20   any extra time worked is a disputed fact, as is the amount of any such payments.  Because there are

21   disputed questions of fact as to Defendants' subjective and objective good faith, summary

22   adjudication on the issue of FLSA liquidated damages is DENIED.

23                      **5.      Mr. Magidish's Individual Liability**

24          Defendants argue that Plaintiff's claims against Mr. Magidish in his individual capacity fail

25   as a matter of law because Plaintiff was employed by Lovell's, which was owned by ALAEA-72,

26   Inc., and not by Mr. Magadish personally.  See Magadish Decl. ¶¶ 2-3, Exs. A-C.  They contend that

27   Plaintiff has not presented any evidence that would allow him to pierce the corporate veil or

28   otherwise disregard the corporate form, and that his arguments in favor of individual liability relate

**United States District Court**
For the Northern District of California

1   solely to the FLSA.   Therefore, at a minimum they seek summary adjudication of the California

2   state law claims against Mr. Magadish.

3                              **a.      FLSA Claims**

4        The FLSA defines an "employer" as "any person acting directly or indirectly in the interest

5   of an employer in relation to an employee . . . ."  29 U.S.C. § 203(d).  The Ninth Circuit has held that

6   the definition of "employer" under the FLSA is not limited by the common law concept of

7   "employer," but "'is to be given an expansive interpretation in order to effectuate the FLSA's broad

8   remedial purposes.'" Boucher v. Shaw, 572 F.3d 1087, 1090 -1091 (9th Cir. 2009) (quoting Lambert

9   v. Ackerley, 180 F.3d 997, 1011-12 (9th Cir.1999) (en banc) .  The determination of whether an

10  employer-employee relationship exists does not depend on "isolated factors but rather upon the

11  circumstances of the whole activity." Id.  The key is the "economic reality" of the relationship.  Id.

12  The economic reality test requires the court to examine whether the alleged employer:  (1) had the

13  power to hire and fire the employee; (2) supervised and controlled employee work schedules or

14  conditions of employment; (3) determined the rate and method of payment; and (4) maintained

15  employment records.  See Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1470

16  (9th Cir.1983) (abrogated on other grounds by Garcia v. San Antonio Metropolitan Transit

17  Authority, 469 U.S. 528, 539 (1985)).

18       In Lambert, the Ninth Circuit upheld a finding of liability against a chief operating officer

19  and a chief executive officer where the officers had a significant ownership interest as well as

20  operational control of significant aspects of the company's day-to-day functions, the power to hire

21  and fire employees, the power to determine salaries, and responsibility for maintaining employment

22  records.  Lambert, 180 F.3d at 1012.  The court found that the evidence supported a jury

23  determination that the individuals exercised economic and operational control over the employment

24  relationship with the employees, and were accordingly employers within the meaning of the Act.

25  Id.; see also Chao v. Hotel Oasis, Inc., 493 F.3d 26, 34 (1st Cir. 2007) (holding corporation's

26  president personally liable where he had ultimate control over business' day-to-day operations and

27  was the corporate officer principally in charge of directing employment practices); United States

28  Dep't of Labor v. Cole Enters., Inc., 62 F.3d 775, 778-79 (6th Cir. 1995) (president and 50% owner

    of corporation was "employer" within FLSA where he ran business, issued checks, maintained

                                                                                              24

1  records, determined employment practices and was involved in scheduling hours, payroll and hiring

2  employees).

3      Mr. Magidish formed corporate defendant ALEA-72 Inc. in 2002, and ALEA-72 in turn

4  owns and operates "Lovell's Antique Gallery." Magidish Decl. ¶ 2-3, Exs. A-B; Magidish Depo. 16.

5  Mr. Magadish was responsible for posting, calculating, measuring, estimating, recording, or

6  otherwise determining the hour worked by Plaintiff, and wages paid him.  Wang Decl. Ex. 5

7  (Defendants Response to Plaintiff's Interrogatory No. 7).  Mr. Magidish also authorized and issued

8  payments to Plaintiff.  Id. at Interrogatory No. 8. Mr. Magidish supervised Plaintiff's work, and was

9  responsible for recruiting, hiring, firing, disciplining, assigning jobs and setting wages for Plaintiff.

10  Id. at Interrogatory Nos. 9, 10.  Given the facts indicating that Mr. Magidish could be deemed an

11  "employer" under the FLSA, summary adjudication of Plaintiff's FLSA claims against Mr.

12  Magidish in favor of Defendants is DENIED.

13                    **b.      California Labor Code Claims**

14      Plaintiff's Opposition does not address the propriety of his California claims against Mr.

15  Magidish, and during oral argument he conceded that they should be dismissed. Defendants' motion

16  for summary adjudication of claims 1, 3, 4, 5 and 6 is GRANTED as to Mr. Magadish.

17              **6.      Procedural Deficiencies Of Plaintiff's Opposition**

18      Defendants' Reply points out the numerous procedural defects of Plaintiff's Opposition and

19  request that it be stricken as a sanction.  The Opposition was filed seven hours late in violation of

20  Local Rule 7-3(a).  It is 33 pages long in violation of Local Rule 7-4(b), and Plaintiff did not ask for

21  leave to file excess pages as provided for by Local Rule 7-11 or mention the fact that the brief is

22  over the allowed length.  The Opposition does not contain a table of contents or table of authorities

23  as required by Local Rule 7-4(a)(2).  The Opposition is dated July 26 but was not filed until August

24  11, and therefore Plaintiff had ample time to request additional pages and to prepare the required

25  tables but failed to do so.  Additionally, Plaintiff's social security number was not redacted from an

26  exhibit related to the Opposition, in violation of Federal Rule of Civil Procedure 5.2.  Two exhibits

27  associated with the Opposition were entirely blank, and were not provided to the Court until after

28  Defendants' Reply was due.  Plaintiff filed two errata relating to the Opposition and accompanying

declaration (one correcting typos and one attaching omitted deposition pages), one of which was

1   filed after Defendants' Reply. Plaintiff did not provide chambers copies of his Opposition papers for

2   over a week.

3       Plaintiff's counsel is admonished for failure to follow the Court's rules, and is Ordered to

4   strictly comply with all applicable procedural rules going forward. However, the Opposition was

5   not stricken as a sanction because Defendants have not shown any prejudice resulting from

6   Plaintiff's procedural violations.

7       **B.    Plaintiff's Motion for Partial Summary Adjudication**

8       Plaintiff has moved for partial summary adjudication of his claim for violation of California

9   Labor Code § 226 (inadequate wage statements) against Defendant Alea-72, Inc. Section 226(a)

10  provides in pertinent part:

> (a) Every employer shall, semimonthly or at the time of each payment of wages,
> furnish each of his or her employees, either as a detachable part of the check,
> draft, or voucher paying the employee's wages, or separately when wages are paid
> by personal check or cash, an accurate itemized statement in writing showing (1)
> gross wages earned, (2) total hours worked by the employee, except for any
> employee whose compensation is solely based on a salary and who is exempt
> from payment of overtime under subdivision (a) of Section 515 or any applicable
> order of the Industrial Welfare Commission, (3) the number of piece-rate units
> earned and any applicable piece rate if the employee is paid on a piece-rate basis,
> (4) all deductions, provided that all deductions made on written orders of the
> employee may be aggregated and shown as one item, (5) net wages earned, (6)
> the inclusive dates of the period for which the employee is paid, (7) the name of
> the employee and his or her social security number, except that by January 1,
> 2008, only the last four digits of his or her social security number or an employee
> identification number other than a social security number may be shown on the
> itemized statement, (8) the name and address of the legal entity that is the
> employer, and (9) all applicable hourly rates in effect during the pay period and
> the corresponding number of hours worked at each hourly rate by the employee.
> The deductions made from payments of wages shall be recorded in ink or other
> indelible form, properly dated, showing the month, day, and year, and a copy of
> the statement or a record of the deductions shall be kept on file by the employer
> for at least three years at the place of employment or at a central location within
> the State of California.
> . . .
> (e) An employee suffering injury as a result of a knowing and intentional failure
> by an employer to comply with subdivision (a) is entitled to recover the greater of
> all actual damages or fifty dollars ($50) for the initial pay period in which a
> violation occurs and one hundred dollars ($100) per employee for each violation
> in a subsequent pay period, not exceeding an aggregate penalty of four thousand
> dollars ($4,000), and is entitled to an award of costs and reasonable attorney's
> fees.

28      It is undisputed that Alea-72 failed to comply with this provision because it did not provide

him with wage statements itemizing the number of hours worked and the correct wages earned.

United States District Court

For the Northern District of California

1    From 2005 to 2008, Plaintiff was paid in cash and Defendants kept no records of the payments

2    made.  Magidish Depo. 126-128.  Beginning in 2008, Plaintiff was paid partially by check with an

3    attached wage statement, but the statements did not reflect all of the amounts paid because Plaintiff

4    was also paid partially in cash.  Magidish Depo. 125-126.

5         Defendants present no evidence to the contrary in their Opposition, but simply argue that the

6    pay envelopes Plaintiff received every pay period "provide substantially sufficient information" to

7    meet the requirements of section 226.  See Buchanan Decl. Ex. F (copies of pay envelopes, some of

8    which contain Plaintiff's nickname and various other numbers that appear to be the number of days

9    he worked and the amount being paid).  However, the number of days written on the envelopes were

10   admittedly not always accurate, see Hernandez Depo. 107, and much of the other required

11   information was never included.  Therefore, Defendants' argument that the sparse envelopes comply

12   with the detailed requirements of section 226(a) is not well taken.

13        Plaintiff further argues that Defendants' violation of section 226 was "knowing and

14   intentional," therefore entitling him to damages.  See Cal. Labor Code § 226(e).  In Perez v. Safety-

15   Kleen Systems, Inc., 2007 WL 1848037, *9 (N.D. Cal. 2007), the court examined the "knowing and

16   intentional" language, and held that ignorance of the law did not excuse an employer who knowingly

17   provided wage statements containing the incorrect total hours worked.  In this case, from 2005 to

18   2008, Defendants paid in cash and knowingly and intentionally did not keep or provide records of

19   payment.  See Magidish Depo. 128.  Following the reasoning of Perez, this conduct constitutes a

20   knowing and willful violation.  Similarly, from 2008 onward, Plaintiff apparently received a check

21   and wage statement for a portion of his wages, but Defendants knowingly and intentionally did not

22   include all of the wages in the check and accompanying statement and paid another portion in cash.

23   Defendants present no argument or evidence to the contrary in their Opposition.  This, too, is

24   sufficient under Perez to be a knowing and willful violation.

25        Finally, Plaintiff argues that he has suffered injury as a result of Defendants' violation.

26   Specifically, he contends that, because of the lack of wage statements, he is now left to his own

27   devices to determine if the wages he received were sufficient to compensate him for the hours

28   worked, and has no fixed method to calculate the overtime pay he is due which has prejudiced him

     in this lawsuit.  See Elliot v. Spherion Pacific Work, LLC,  572 F.Supp.2d 1169, 1181 (C.D.Cal.

                                                                                              27

United States District Court
For the Northern District of California

1  2008) (injuries courts have found sufficient to sustain a § 226(e) damages claim include "the

2  possibility of not being paid overtime, employee confusion over whether they received all wages

3  owed them, difficulty and expense involved in reconstructing pay records, and forcing employees to

4  make mathematical computations to analyze whether the wages paid in fact compensated them for

5  all hours worked").  As a result of this damage, Plaintiff seeks the maximum statutory damages –

6  $4,000 – for failure to provide the required documentation for three years of employment (2 bi-

7  monthly payments x 3 years = 72 payment periods; $50 for first violation + $7100 for the other 71

8  violations = $7150, which exceeds $4000 maximum so maximum applies).  Plaintiff also seeks costs

9  and fees incurred in prosecuting this portion of his claim.

10      In Opposition, Defendants argue that Plaintiff has admitted that he was paid a fixed amount

11  for every day he worked.  Ulin Depo. 36, 81.  However, this is irrelevant to whether Plaintiff was

12  damaged as a result of Defendants' failure to keep records.  Defendants also argue that Plaintiff's

13  motion lacks evidentiary support because he did not submit a declaration regarding his damages and

14  did not provide copies of the envelopes or wage statements that accompanied his checks in 2008 and

15  2009.  However, copies of the envelopes were attached as Exhibit F to the Buchanan Declaration in

16  Support of Defendants' Motion, as well as in opposition to Plaintiff's motion, and therefore they are

17  before the Court.  With respect to evidence of damages, in Wang v. Chinese Daily News, Inc., 435

18  F. Supp. 2d 1042, 1050-51 (C.D. Cal. 2006), the court held that "this lawsuit, and the difficulty and

19  expense Plaintiffs have encountered in attempting to reconstruct time and pay records" was evidence

20  of the plaintiff's injury as a result of the improper wage statements.  The same reasoning applies

21  here.

22      Instead of opposing the substance of Plaintiff's motion or presenting evidence that they were

23  in compliance with section 226, Defendants primarily oppose the motion on the basis that: (1)

24  Plaintiff submitted false work authorization documents at the time of his employment and therefore

25  is not entitled to any statutory damages; and (2) Plaintiff made interstate deliveries and therefore his

26  employer was exempt from the requirements of section 226.  For the reasons discussed in connection

27  with Defendants' Motion, neither of these arguments defeats summary adjudication.

28      First, Defendants have cited no case holding that a plaintiff who submitted false documents

to an employer is precluded from recovering damages under section 226(e).  Hoffman Plastic

28

1   Compounds, Inc. v. National Labor Relations Board, 535 U.S. 137 (2002) held that such an

2   employee could not recover backpay for work he did not perform under the FLSA, but did not speak

3   to the issue of state law damages such as those in section 226.  Additionally, neither party addresses

4   California's statutes enacted following Hoffman, one of which states that:

5           (a) All protections, rights, and remedies available under state law, except any
            reinstatement remedy prohibited by federal law, are available to all individuals
6           regardless of immigration status who have applied for employment, or who are or
            who have been employed, in this state.
7           (b) For purposes of enforcing state labor and employment laws, a person's
            immigration status is irrelevant to the issue of liability, and in proceedings or
8           discovery undertaken to enforce those state laws no inquiry shall be permitted
            into a person's immigration status except where the person seeking to make this
9           inquiry has shown by clear and convincing evidence that the inquiry is necessary
            in order to comply with federal immigration law.

10

11  Cal. Labor Code § 1171.5; see also Cal. Civil Code § 3339; Cal. Gov't Code 7285; Hernandez v.

12  Paicius, 109 Cal. App. 4th 452, 460 (2003) ("These statutes . . . leave no room for doubt about this

13  state's public policy with regard to the irrelevance of immigration status in enforcement of state

14  labor . . . . laws").  The case relied on by Defendants, Reyes v. Van Elk, Ltd., 148 Cal. App. 4th 604,

15  611 (2007), specifically held that these statutes were not preempted by the Immigration Reform and

16  Control Act ("IRCA").  In light of the fact that Defendants have not cited any case disallowing

17  recovery by an undocumented worker for violation of section 226(e), and the strong California

18  public policy in favor of evenly applying labor laws to documented and undocumented workers, as

19  reflected in California Labor Code section 1171.5,  Defendants' argument fails.

20          Second, Defendants contend that they are exempt from section 226 because a portion of

21  Plaintiff's duties including preparing and packing for delivery in interstate commerce and then

22  accompanying the driver on interstate delivery trips.  However, and as discussed above, Defendants

23  raised this defense for the first time on summary judgment thereby prejudicing Plaintiff, they have

24  made no effort to present evidence of Plaintiff's duties as they compare to the requirements for

25  applicability of the motor carrier exemption, and they have made no effort to identify which weeks

26  of Plaintiff's employment the exemption would apply.  Therefore, Defendants have not met their

27  burden in raising this defense.

28          For all of the foregoing reasons, Plaintiff's Motion is GRANTED and judgment of this claim

    shall be entered in the amount of $4000.

United States District Court

For the Northern District of California

**C.      Plaintiff's Motion to Bifurcate Trial**

Plaintiff has filed a motion to bifurcate trial of liability issues from the calculation of damages pursuant to Federal Rule of Civil Procedure 42(b).  Specifically, Plaintiff asks the Court to hear evidence on the factual issues of whether Plaintiff worked overtime and what, if any, compensation beyond his daily salary was paid for those hours first, and then to apply state and federal law to calculate compensation for any unpaid overtime.

The question of whether to bifurcate a trial is a matter committed to this Court's discretion.  See, e.g., Danjaq LLC v. Sony Corp., 263 F.3d 942, 961 (9th Cir.2001).  Federal Rule of Civil Procedure 42(b) provides:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

When deciding whether to bifurcate, a court should consider: (1) whether separate trials would be in furtherance of convenience; (2) whether separate trials would avoid prejudice; (3) whether separate trials would serve judicial economy; (4) whether separate trials would reduce the risk of jury confusion; and (5) whether the issues are clearly separable.  See William W. Schwarzer, Civil Procedure Before Trial, § 16:160.4 (The Rutter Group 2005).

In his moving papers, Plaintiff's primary argument is that evidence or argument on the differences between the calculation of overtime and related penalties under state and federal law,[3] calculations which are purely legal questions, could confuse the trier of fact and potentially prejudice the decision making process on the factual issues to be decided.  Plaintiff further argues that bifurcation will promote efficiency because each side can present evidence on the factual (i.e. liability) dispute of whether and how much Plaintiff worked overtime and how much extra he was

---

[3]Plaintiff explains the differences in calculation methods as follows:  Under the FLSA, the regular rate of pay is calculated by "dividing his total remuneration for employment (except statutory exclusions) in any work week by the total number of hours actually worked by him in that workweek for which compensation was paid."  29 C.F.R. § 778.109.  In contrast, California law determines the regular rate of pay for an employee such as Plaintiff who was paid a fixed daily rate by dividing the daily rate by eight hours.  See Lujan v. Southern Cal. Gas Co., 96 Cal. App. 4th 1200 (2002).  These differing formulas would likely result in a different rate of overtime pay under state and federal law.

1  paid for this work, and then, if liability is found, the amount of damages can be resolved by briefing

2  the Court on the remaining legal issues.

3        Defendants do not oppose Plaintiff's motion on substantive grounds, but instead argue that

4  the motion is premature because pursuant to the Case Management Order bifurcation is an issue to

5  be addressed in the joint pretrial statement and decided at the pretrial conference in November.

6  While the Case Management Order does require that the parties address bifurcation in their pre-trial

7  papers, it does not preclude a party from raising the issue in advance.  Therefore this argument is not

8  persuasive.  Defendants further point out that Plaintiff has waived a jury trial.  <u>See</u> Buchanan Decl. ¶

9  2.  Plaintiff admits that he has waived a jury trial and all issues, whether bifurcated or not, will be

10  heard by the Court.  Accordingly, there will be no jury to confuse.  Plaintiff also contends that an

11  Order on bifurcation is appropriate now because it will affect the scope of the pre-trial submissions

12  and therefore promote efficiency.  However, Plaintiff does not explain this argument at all.

13        Given that Plaintiff has not explained how bifurcation will promote efficiency, and there do

14  not appear to be issues of jury confusion because this will be a Court trial, the motion is DENIED

15  WITHOUT PREJUDICE to Plaintiff raising the issue in connection with the pre-trial conference.

16

17  **IT IS SO ORDERED.**

18

19  Dated: September 22, 2010

20  _____
ELIZABETH D. LAPORTE
United States Magistrate Judge

21

22

23

24

25

26

27

28