ADAM WANG, Bar No. 201233
ADAM PEDERSEN, Bar No. 261901
LAW OFFICES OF ADAM WANG
12 South First Street, Suite 708
San Jose, CA 95113
Tel: (408) 292-1040
Fax: (408) 416-0248

Attorneys for Plaintiff

UNITED STATES FEDERAL COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ULIN,<br><br>            Plaintiff,<br>     vs.<br><br>ALEA-72 INC. et. al.,<br><br>            Defendants, | Case No. C09-3160 EDL<br><br>PLAINTIFF'S SUMMATION FOLLOWING A BENCH TRIAL |

## I.    INTRODUCTION

It was established at trial that Plaintiff was paid a fixed sum each day worked.  Evidence stands uncontroverted that Plaintiff was required to report to work at 9:00 a.m. each workday.  Evidence clearly established that Plaintiff and other warehouse workers were allowed to take lunch, but not allowed to leave the warehouse during the lunch hours.

While Defendants contend that Plaintiff only worked through 6:00 p.m. each workday, and no more than 5 days a week, Plaintiff has introduced enough evidence to allow the OCurt to draw a reasonable inference that he worked six days a week and from 9:00 a.m. to 9:00 p.m. every day.  As it is clear that Defendants failed to maintain the accurate records as to the hours and days worked by Plaintiff, the Court should find Plaintiff had worked 6 days a week and 12 hours a day under *Anderson.*

## II.   THE HOUR FROM 9:00 AM TO 10:00 AM IS COMPENSABLE

It is not disputed that Plaintiff had to report to store at 9:00 a.m. every workday.  Roberto Hernandez Testimony. Plaintiff Testimony; Mendoza Depo., at 16:16-17:13.  Plaintiff claims

that he had to sweep and mop floor from 9:00 am to 10:00 am before going to warehouse, Mendoza Depo., at 13:2-9; 14:7-15:22;  while Defendants claim that Plaintiff and other workers eat breakfast and sit around without performing any work during that hour. Defendants' version of the fact does not make sense.  Evidence is uncontroverted that store opened at 9:00 a.m. Workers had to buy their own breakfast.  Mendoza Depo:  at 65:17-66:18.  There is no need to require Plaintiff and other workers to report at store at 9:00 a.m. other than require them to work.

Even taking Defendants' story as true, Plaintiff should still be compensated from 9:00 a.m. because he was under Defendants' control when he reported to store at 9:00 a.m. Wage Order No. 7-2001 defines " hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." (*Cal.Code Regs., tit. 8, § 11070, subd. 2(G)*.  As held by California Supreme Court, "an employee who is subject to an employer's control does not have to be working during that time to be compensated under Wage Order []" *Morillion v. Royal Packing Company*, 22 Cal.4th 575, 583 (2000).  In *Bono Enterprises, Inc. v. Bradshaw* (1995) 32 Cal.App.4th 968, in fining that  employees who were required to remain on the work premises during their lunch hour had to be compensated for that time under the definition of "hours worked" even though there was not work to perform, the California Appellate Court interpreted the wage order phrase "subject to control" to mean when an employer "directs, commands or restrains" an employee. *Id.*, at 974-975.  Thus, "[w]hen an employer directs, commands or restrains an employee from leaving the work place during his or her lunch hour and thus prevents the employee from using the time effectively for his or her own purposes, that employee remains subject to the employer's control. According to [the definition of hours worked], that employee must be paid." *Id.* Similarly, in *Aguilar v. Association for Retarded Citizens* (1991) 234 Cal.App.3d 21, the Court of Appeal held that the time an employer required personal attendant employees to spend at its premises, even when they were allowed to sleep, should be considered "hours worked", because the employees were subject to the control of the employer. *Id*., at 30.

Here, Plaintiff was required to report to the store at 9:00 a.m. every workday. By requiring Plaintiff to report to store at 9:00 a.m., Defendants restrained Plaintiff and "prevented the employee from using the time effectively for his or her own purposes". Therefore, "[i]f an employee is required to report at the actual place of performance of his principal activity at a certain specific time, his 'workday' commences at the time he reports there for work in accordance with the employer's requirement, even though through a cause beyond the employee's control, he is not able to commence performance of his productive activities until a later time. In such a situation the time spent waiting for work would be part of the workday." *United Transportation Union Local 1745 v. City of Albuquerque,* 178 F.3d 1109, 1124 (10th Cir. 1999). Therefore, Plaintiff should be compensated from 9:00 a.m. when he reported to store.

## III.   APPLICATION OF BURDEN SHIFTING UNDER *ANDERSON*

The remaining disputes between parties in this case surround the hours and days Plaintiff worked. Because Defendants failed to maintain the accurate time records as required by the law, the Court should apply burden-shifting mechanism under *Anderson* in resolving the disputes.

   A.   <u>Evidence at Trial Demonstrates that Defendants Failed to Maintain the Required Accurate Time Records.</u>

Defendants testified that two sets of records were kept. First, Defendant's secretary Yesika Jimenez would keep a calendar recording the days Plaintiffs worked and the time Plaintiff arrived at work and left the work on any given workday. Defendants claimed all calendars kept by Jimenez could not be found except for 2008. These 2008 calendars did record the time Plaintiff arrived at and left work. However, Defendants' witness starkly contradicted each other about how these time records were generated. Jimenez at deposition testified that she obtained these hours form Plaintiff's manager Roberto Hernandez. Yesika Depo., 66:3-67:24. However, at both trial and deposition, Roberto Hernandez testified that he did not tell Yesika Plaintiff's hours to record; Roberto Hernandez Depo., at 100:5-101-19; and nor was his job duties to monitor Plaintiff's work hours. Roberto Hernandez Testimony at trial. At trial, when

confronted why she said Roberto Hernandez told her what hours Plaintiff worked when Roberto said he did not, Yesika testified that she was confused at her deposition and she now remembers that she recorded those hours herself. Yesika Testimony at trial. Clearly, the calendars kept by Yesika failed to record the accurate hours worked by Plaintiff.

The second set of calendar produced by Defendants was alleged maintained by Defendant Magidish who said he would call Yesika to find out which day Plaintiff worked and kept a record of it. However, Magidish calendar is obviously not accurate. Defendants Exhibit I summarized the delivery trips made by Plaintiff in the year of 2008. Comparing these summaries against Magidish calendar, many days that Plaintiff was clearly on the delivery trips are not shown on the calendar. On many occasions, Magidish calendar would note the driver working on a given day while indicating Plaintiff not working on that day even though the delivery summaries reveal that Plaintiff went on the trip with that driver. When asked for an explanation how such mistakes could occur, Defendant Magidish testified that he was not good at keeping any records. The evidence is incontrovertible that Magidish calendar did not accurately record the time and days Plaintiff worked.

     B.    <u>Plaintiff Was Not Given the Required 30-Minute Meal Period</u>

An employer is required to keep records of when the meal period starts and ends. Wage Order No. 7-2001 (*Cal.Code Regs., tit. 8, § 11070, subd. 7(A)(3)*.[1] It is not disputed that no records have been maintained showing any meal periods taken by Plaintiff. As such, pursuant to the burden-shifting rule under *Anderson*, the Court should award Plaintiff the reasonable meal periods as claimed by Plaintiff after Plaintiff met his burden of establishing a prima facie case.

---

[1] Subsection 7(a)(3) provides:
"(A) Every employer shall keep accurate information with respect to each employee including the following:
…
 (3) Time records showing when the employee begins and ends each work period. Meal periods, split shift intervals and total daily hours worked shall also be recorded. Meal periods during which operations cease and authorized rest periods need not be recorded.

PLAINTIFF'S SUMMATION FOLLOWING THE BENCH TRIAL
Ulin v. Alea-72 Inc., et al.          4          Case No. C-09-3160 EDL

Here, Plaintiff has met his burden that he was not provided with any 30-minute meal periods during he was free of any control or restrain by Defendants. Plaintiff's claim that he was required to stay on Defendants' premise while having the lunch was confirmed by an independent witness Heriberto Mendoza (Mendoza Depo., at 41:19-42:17) and by Defendants' witness Pedro Hernandez who is a currently employed by Defendants. All these testimonies have depicted the same situation: while workers were allowed to sit down to take lunch when there was no delivery truck at the warehouse that needed to be unloaded, they were required to stay on the premise and were not allowed to leave the premises to do whatever they needed to do. As such, Plaintiff was subject to control of Defendants during these hours, and was not provided the meal period that is required by law.

    C.    <u>Plaintiff Had Worked from 9:00 a.m. to 9: 00 p.m. and Six Days A Week</u>

An employer is required to record the time employee starts and ends each work period (Wang Order No. 7-2001, *Cal.Code Regs.*, tit. 8, § 11070, subd. 7(A)(3).[2] Employer is also required to record the number of hours an employee worked every day, Cal. Labor Code § 1174(d). Plaintiff has established that Defendants have utterly failed this record-keeping obligation requited of them. Calendar produced by Yesika with the hours noted on it is a highly suspect that those hours were put on the calendar after the fact when this case was filed because not only Plaintiff and independent witness Heriberto Mendoza testified to have worked a schedule drastically differently from what is shown on Yesika's calendar, but also the author Yesika herself could not tell how those hours shown on her calendar came about. Furthermore, the calendar produced by Defendant Magidish recording far less days than Plaintiff alleged to have worked is also of dubious accuracy. Given the fact that the original records kept by Yesika containing more accurate number of days worked went missing inexplicably, the uniform pattern of apparent scratches of certain consecutive calendar entries highlight the likelihood that these Magidish calendars may have also been manufactured after the fact.

---

[2] See footnote 1, supra for the provision of the cited section.

Absent the accurate and complete records of hours and day worked by Plaintiff, Plaintiff has met his burden under *Anderson* in demonstrating the reasonableness of the hours he claimed. The evidence is not disputed that Defendants gallery opened 7 days a week; and from 9:00 a.m. to 9:00 p.m. Plaintiff offered evidence that he worked six days a week; and 9:00 a.m. to 9:00 p.m. Monday to Friday, and on Sundays from 10:00 a.m. to 7:00 p.m. Mendoza Depo., at 16:24-17:13; 27:19-29:10; 47:4-10. Defendants' secretary/manager Yesika had acknowledged that Plaintiff had indeed worked on some occasions worked six days a week. Mostly importantly, the very few documentary evidence that is available in this case —Plaintiff's payroll envelopes— have confirmed that Plaintiff indeed worked six days or even 7 days a week.

In the face of Plaintiff's prima facie case, Defendants have failed to meet their burden to come forward with the evidence of the exact number of hours worked; or negate the reasonable inference that the Court may draw from Plaintiff's evidence. Although Defendants insisted, without any objective evidence, that Plaintiff never worked six days a week, Plaintiff's direct supervisor Roberto Hernandez testified that he did not remember how many days Plaintiff did work. Roberto Hernandez Depo., at 65:3-66:25. While Defendants adamantly denied that no warehouse worker including Plaintiff had ever worked past 6:00 p.m., the documents certainly establish that at least on those occasions when deliveries were made to customers after 6:00 p.m. at a distant location before the employees had to travel back and return the truck tot eh store. Plaintiff Exh. 3A. Under these circumstances, the isolated testimony of a Defendants' *current employee* is not sufficient to meet the heavy burden of an employer to negate the reasonable inference that can be drawn from Plaintiff's evidence when employer failed to maintain the required the accurate records. *McLaughlin v. Seto*, 850 F.2d 586 (9th Cir. 1988) (the testimony of employer's four current employees was not found not credible and did not negate the inference drawn from Plaintiff's evidence).

**IV.   DEFENDANTS ARE NOT ENTITLED TO ANY CREDITS FOR TIPS CUSTOMERS PAID PLAINTIFF**

First, under California, Defendants are not entitled to take any credit against overtime due

Plaintiff for the gratuities Plaintiff received from customers.  Under Cal. Labor Code § 315, the gratuities paid by customers is the sole property of the employee who rendered the service.[3]

There are special FLSA provisions for "tipped employees." A tipped employee is defined as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). If an employee qualifies as a tipped employee, the employer may take credit of the amount of the tip paid employee not to exceed 50% of the minimum wage applicable for the workweek (29 C.F.R. § 531.59).  In the event the tip credit provision applies, there are special provisions for calculating the overtime wage applicable to tipped employees. 29 C.F.R. § 531.60.

Before discussing the complicated calculations of amount of tip credit credit, Defendants, as the employer, bear the burden to prove the applicability of the tip credit in this case. *Fast v. Applebee's International, Inc.*, 2010 WL 816639, at **7-9**  (W.D Mo. 2010); *see also* Smith v. Noso, Inc., 2007 WL 2254531, at *4  (M.D.Fla. 2007) ("Courts interpreting these provisions have concluded that the employer bears the burden of showing the applicability of the tipped employee provisions;" "Unless the employer satisfies its burden of showing the applicability of the tip credit, the employees are "entitled to the full minimum wage for every hour worked", citing  *Barcellona v. Tiffany English Pub, Inc.,* 597 F.2d 464, 467 (5th Cir.1979) ( "On May 1, 1974, the [ FLSA] was amended to place the burden of proving the amount of tips received on the employer for purposes of allowing the ... tip credit."); *Kilgore v. Outback Steakhouses of Fla., Inc.,* 160 F.3d 294, 298 (6th Cir.1998) (employer bears burden); *Martin v. Tango's Restaurant, Inc.,* 969 F.2d 1319, 1323 (1st Cir.1992) (same)); *see also Driver v. Appleillinois*

---

[3] Cal. Labor Code § 351 provides:
> "No employer or agent shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron, or deduct any amount from wages due an employee on account of a gratuity, or require an employee to credit the amount, or any part thereof, of a gratuity against and as a part of the wages due the employee from the employer. Every gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for."

1  LLC., 265 F.R.D. 293, 298 (N.D. IL 2010) (employer bears burden to prove the entitlement to tip
2  credit); Pedigo v. Austin Rumba, Inc., 2010 WL 2730462, at *7  (W.D.Tex.) (citing ." *Bernal v.*
3  *Vankar Enter., Inc.,* 579 F.Supp.2d 804, 808 (W.D.Tex. Sept.30, 2008); *Lewis v. Adams Sys.,*
4  *LLC,* No. H-08-2009, 2008 WL 4858356, at *3 (S.D.Tex. 2008) ("The employer bears the
5  burden of proving the validity of an employee tip pool ..."); *Chisolm v. Gravitas Rest. Ltd.,*
6  2008 WL 838760, at *2 (S.D.Tex. 2008)  ("the employer, bears the burden of proving its
7  entitlement to a tip credit."); *Reich v. Priba Corp.,* 890 F.Supp. 586, 596 (N.D.Tex. 1995)).

8       Here, Defendants have fallen far from establishing that they are entitled to the tip credit
9  in this case.  There is mere testimony of Plaintiff that sometime he received tips from customers.
10 There is no motioning of any amount Plaintiff receive din tips.   There is simply no evidence in
11 the records that Plaintiff "regularly and customarily" received $30 a moth in tips.  As such,
12 Defendants have not met their burden to show that they are entitled to any tip credit on account
13 of tip received by Plaintiff.

14 **V.    CONCLUSION**

15      Plaintiff respectfully submits that the on the evidence of this case, the Court should find
16 that Plaintiff regularly worked from 9:00 a.m. to 9:00 p.m.; and six days a week.  Defendants
17 have failed to provide Plaintiff required meal period; and Defendants are not entitled to take any
18 tip credit on account of the tips received by Plaintiff from customers.

20 Dated: December 21, 2010              By:    /s/ ADAM WANG
                                                Adam Wang
21                                              Attorney for Plaintiff